# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Primerica Life Insurance Co.,

     Plaintiff

v.

Karen V. Aguilar, Gwendolyn L. Dyson, &
American Funeral Financial, LLC

     Defendants

Case No.: 2:20-cv-00121-JAD-BNW

**Order Denying Cross-Motions for
Summary Judgment and Granting
Plaintiff's Motion for Attorneys' Fees**

[ECF Nos. 38, 39, 53]

     Primerica Life Insurance Co. filed this interpleader suit against Gwendolyn Dyson, the administrator of her son John Coleman's estate; Karen Aguilar, Coleman's ex-wife; and American Funeral Financial, LLC, seeking a declaratory judgment to determine the beneficiary of Coleman's life-insurance policy's proceeds.[1]  Aguilar and Dyson cross-move for summary judgment.  Dyson, joined by American Funeral, argues that Coleman's divorce from Aguilar nullified her beneficiary status under Nevada Revised Statute § 111.781 and that his policy's proceeds must go to his estate.[2]  But Aguilar—maintaining that Coleman intended for her to remain the beneficiary on his life-insurance policy—largely argues that he re-designated her as his beneficiary after their divorce.[3]  Primerica, having filed the suit and successfully requested this court's permission to seek attorneys' fees,[4] requests $11,337.37 in attorneys' fees and costs.[5]

---

[1] ECF No. 1 (complaint).

[2] ECF Nos. 38 (motion for summary judgment); 44 (joinder).

[3] ECF No. 39 (motion for summary judgment).

[4] ECF No. 52.

[5] ECF No. 53.

No defendant opposes that motion, though Aguilar argues that the costs request includes charges disallowed under this court's local rules.[6]

I find that, under Nevada law, Aguilar's status as Coleman's beneficiary was automatically revoked when the two divorced. But factual disputes preclude my resolving whether Coleman re-designated Aguilar as his beneficiary in the letter he sent to Primerica. So I deny both motions for summary judgment. I also find that Primerica's fees request contains some costs disallowed under this court's local rules, so I grant in part its motion and permit it to recover $11,294.12 in fees.

**Background**

Coleman obtained a life-insurance policy from Primerica on June 21, 2013, set to expire June 19, 2077.[7] With a face value of $412,000, it (1) stated that the policy's beneficiary "is the person(s) named in the application as the Beneficiary, unless later changed"; (2) contained a spouse-rider provision, designating Karen Coleman (née Aguilar) as the insured; and (3) apparently lacked a contingent beneficiary.[8] Despite not attaching Coleman's application to their motions, the parties appear to agree that Coleman designated Aguilar as his beneficiary.[9] The policy also provided that, absent a "living [b]eneficiary," "contingent [b]eneficiary," or policy owner (i.e., Coleman), "[p]roceeds will be paid" to Coleman's "estate."[10] But Coleman

---

[6] ECF No. 55.

[7] ECF No. 47-1 at 4.

[8] ECF Nos. 38 at 4; 38-5 at 4, 20; 47-1 at 8 ("*Beneficiary*—The person(s) to whom the Policy proceeds are payable at the death of the Insured. This is the person(s) named in the application as the Beneficiary, unless later changed.").

[9] ECF Nos. 38, 39.

[10] ECF No. 47-1 at 9.

could change the beneficiary by "[n]otice to [Primerica]," which required "[i]nformation [Primerica] ha[s] received [that] is signed by [Coleman] and acceptable to [Primerica]."[11]

On October 2, 2017, Coleman and Aguilar divorced, and Coleman sent a signed letter to Primerica on December 3rd, which read in part:

> Re: Delete Spouse on Policy[ #]04-89522491
>
> Dear Primerica Life Insurance,
>
> I, John Coleman, would like to delete the entire Spouse Rider, Karen Coleman, on my current life insurance policy—due to divorce.  *Please remove Karen Coleman from my policy and allow her to convert to her own.*
>
> Please keep all my other policy details (term, plan type, classification, rating) the same.[12]

In its internal files, Primerica noted that it believed Coleman and Aguilar's divorce had terminated her status as the policy's beneficiary; Coleman "is the only one that could designate [a new beneficiary] on the policy"; and, ostensibly in reference to this December 2017 letter, that he "did not redesignate his former spouse as[]his beneficiary."[13]  So Primerica issued Coleman an updated policy on December 20, 2017, under the same policy number, absent the spouse-rider provision or an explicit clarification of his beneficiary status.[14]

But when Coleman died the next year,[15] multiple parties—including Aguilar, Dyson, and American Funeral—felt that his policy was unclear and made claims on his life insurance.  So Primerica filed an interpleader suit in this court under 28 U.S.C. § 1335, seeking declaratory

---

[11] ECF No. 38-5 at 8–9.

[12] ECF No. 47-1 at 64 (emphasis in original).

[13] ECF No. 38-5 at 48.

[14] *Id.* at 32–47.

[15] *Id.* at 55.

relief and a determination of which party is legally entitled to Coleman's life-insurance policy's proceeds.[16]   The defendants now cross-move for summary judgment on Primerica's declaratory-relief claim, and Primerica seeks its attorneys' fees and costs for having to interplead the policy proceeds.[17]

**Discussion**

**I.   Summary-judgment motions [ECF Nos. 38, 39]**

This case presents the question: is Aguilar the beneficiary of Coleman's life-insurance policy; or did Coleman's policy lack a beneficiary, thus mandating distribution of any policy proceeds to his estate.   The estate, administered by Dyson, argues for the latter position, maintaining that it was the rightful beneficiary of the policy's proceeds because Coleman's divorce automatically revoked Aguilar's status as the policy's beneficiary under Nevada law.[18] American Funeral agrees, likely because Dyson assigned it a portion of the policy's proceeds to cover Coleman's funeral costs.[19]   But Aguilar argues for the former position, asserting that she should receive the policy's payout.[20]   She posits three theories: (1) Coleman's December 2017 life-insurance policy was a new policy that designated her as its beneficiary; (2) Coleman's December 2017 letter is a governing instrument that re-established her as the policy's rightful beneficiary; and (3) Coleman's letter properly notified Primerica of his intent to re-designate her as his beneficiary.[21]   I find that Nevada law operated to revoke Aguilar's beneficiary status on

---

[16] *See generally* ECF No. 1.

[17] ECF Nos. 38, 39, 44, 53.

[18] ECF No. 38 at 3.

[19] ECF No. 44 at 9.

[20] ECF No. 39.

[21] *Id.* at 3; ECF No. 47 at 5.

Coleman's life-insurance policy and that his December 2017 letter was not a governing instrument capable of overcoming that revocation under NRS § 111.781.  But factual disputes preclude my resolving on summary judgment whether the letter provided sufficient notice of Coleman's intent to re-designate Aguilar as his beneficiary.

### A.  Standard of review

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[22]  Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[24]  If the moving party satisfies its burden, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[25]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[26]  If the opposing party would have the burden of proof on a dispositive issue at trial, the

---

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[23] *See id.* at 322 (citing Fed. R. Civ. P. 56(c)).

[24] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[25] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[26] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)) (citation and quotation marks omitted).

moving party doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[27]  In that case, the movant need only defeat one element of the claim to garner summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[28]  When resolving "cross-motions for summary judgment on the same claim," "the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[29]  And under the 2010 amendments to Federal Rule of Civil Procedure 56, litigants need only show that the substance of the proffered evidence will be admissible at trial.[30]

## B.   Effect of the divorce on Coleman's life-insurance policy

NRS § 111.781 automatically revoked Aguilar's status as a beneficiary when she and Coleman divorced in 2017.  The parties appear to agree that Nevada law governs Coleman's life-insurance policy.[31]  Before 2011, Nevada courts generally held that "the rights of [a] beneficiary in an ordinary life[-]insurance policy [were] not affected by subsequent divorce," especially when the policy owner made "no attempt" to "change the beneficiary after the divorce" and kept up "payments on the policy."[32]  But the Nevada Legislature reversed that rule by passing NRS

---

[27] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

[28] *Celotex*, 477 U.S. at 322.

[29] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

[30] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished); *see* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment; *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017).

[31] *See* ECF Nos. 38, 39; Nev. Rev. Stat. § 123.010 ("The property rights of a married couple are governed by this chapter . . . .").

[32] *Redd v. Brooke*, 604 P.2d 360, 361 (Nev. 1980).

§ 111.781, which articulates the new "effect of divorce or annulment on non[-]probate transfer of property" in Nevada.[33]  It states:

> Except as otherwise provided by the express terms of a governing instrument, a court order[,] or a contract relating to the division of the marital estate made between the divorced persons before or after the marriage, divorce[,] or annulment, the divorce or annulment of a marriage:

> (a) Revokes any revocable: (1) Disposition or appointment of property made by a divorced person to his or her former spouse in a governing instrument . . . .[34]

In *Matter of Colman Family Revocable Living Trust, Dated June 23, 2011*, the Nevada Supreme Court held that, unless otherwise provided for by contract or court order, "any revocable dispositions of property to a former spouse" are "automatically revoked upon divorce."[35]  The United States Supreme Court reasoned similarly when describing a substantively identical Minnesota law, noting that, upon divorce, "the clause naming [the former spouse] as [the owner's] insurance beneficiary is automatically revoked" and any policy proceeds would "go to any contingent beneficiary named in the policy" or, "failing that, to his estate."[36]  Because life-insurance proceeds qualify as a non-probate transfers under Nevada law,[37] multiple federal Nevada district courts have held that NRS § 111.781 works to automatically revoke former spouses' legal entitlement to life-insurance proceeds upon

---

[33] Nev. Rev. Stat. § 111.781.

[34] *Id.* § 111.781(1)(a)(1).

[35] *Matter of Colman Family Revocable Living Trust, Dated June 23, 2011*, 460 P.3d 452, 454 (Nev. 2020).

[36] *Sveen v. Melin*, 138 S. Ct. 1815, 1819–20 (2018) ("26 States have by now adopted revocation-on-divorce laws substantially similar to the Code's.")

[37] Nev. Rev. Stat. § 111.721 ("'Nonprobate transfer' means a transfer of any property or interest in property from a decedent to one or more other persons by operation of law or by contract.").

divorce.[38]  I find those courts' decisions persuasive and reason similarly, holding that Coleman's divorce from Aguilar automatically revoked her status as his policy's beneficiary as a matter of law.

The reissuance of Coleman's policy after his divorce does not alter this conclusion. Contrary to Aguilar's unfounded assertions otherwise, there is no evidence in the record that Coleman applied for and received a new policy not subject to NRS § 111.781 in December 2017. Instead, Coleman received "a continuation of a pre-existing policy," with identical terms and conditions. [39]  While neither party points me to controlling Nevada law on the issue, the Ninth Circuit has reasoned that, "in California, as in most other jurisdictions, the renewal of an insurance policy means the continuation of coverage on substantially the same terms," perpetuating "the terms and conditions of the original policy *unless the parties provide otherwise*."[40]  I see no reason in the record to deviate from that understanding and find that Coleman's December 2017 policy was not a "new" policy—Coleman did not separately apply for it, it has the same policy number as his previous policies, and it contains no language indicating that it supersedes, replaces, or otherwise invalidates any prior life-insurance policy.

---

[38] *See, e.g.*, *Genworth Life & Annuity Ins. Co. v. Ruckman*, No. 2:18-CV-1470, 2019 WL 6255480, at *6 (D. Nev. Nov. 22, 2019) ("NRS [§] 111.781 applies retroactively to revoke Ruckman's status as beneficiary under the life insurance policy.  This is so regardless of when the underlying divorce took place."); *Primerica Life Ins. Co. v. Abah*, No. 2:14-cv-858, 2014 WL 12791942, at *2 (D. Nev. Oct. 16, 2014) ("[S]ection 111.781's effect is clear: when a divorce is finalized, the provisions of a governing instrument, like Anthony's life-insurance policy, are given effect as if the former spouse and her relatives (e.g., Amia and Joan) predeceased, disclaimed, or revoked any benefits provided by the governing instrument.").

[39] *Cossolias v. Mutual Life Ins. Co. of N.Y.*, 865 F.2d 263, at *3 (9th Cir. 1988) (unpublished).

[40] *Am. Cas. Co. of Reading, Penn. v. Baker*, 22 F.3d 880, 893 (9th Cir. 1994) (emphasis in original).

1  So NRS § 111.781's revocation of Aguilar's beneficiary status applied through the December

2  2017 re-issuance of the policy.

3        **C.    Effect of Coleman's December 2017 letter on his life-insurance policy**

4        The fact that Nevada's statute automatically revoked Aguilar's beneficiary status does

5  not mean, however, that Coleman could not re-designate her.  As the United States Supreme

6  Court noted in *Sveen v. Melin*, an automatic-revocation-of-beneficiary-status statute like

7  Nevada's can be overcome in multiple ways: the policy owner "could agree to a marital

8  settlement ensuring [his former spouse's] continued status as his beneficiary" or "he could notify

9  his insurance company anytime that he wishes to restore [his former spouse] to that position."[41]

10  Coleman's policy anticipates just such a possibility; it provides Coleman the opportunity to

11  change his beneficiary designation in a writing acceptable to Primerica.  And NRS § 111.781

12  prescribes a separate means to overcome automatic revocation, stating that "the express terms of

13  a governing instrument" or "a court order" can nullify its automatic beneficiary revocation.[42]  So

14  I turn to whether Coleman's December 2017 letter was either (1) a governing instrument within

15  the meaning of NRS § 111.781, designating Aguilar as a beneficiary; or (2) sufficient notice to

16  Primerica under the policy, reestablishing Aguilar as a beneficiary.

        ***1.    Governing instrument under NRS § 111.781***

18        Coleman's December 2017 letter is not a governing instrument capable of designating

19  Aguilar as a beneficiary under NRS § 111.781.  The statute provides that a "governing

20  instrument" capable of supplanting the statute's automatic-revocation provision must be

21  "executed by a divorced person *before* the divorce or annulment of the person's marriage to the

---

23  [41] *Sveen*, 138 S. Ct. at 1820–21.

   [42] Nev. Rev. Stat. § 111.781(1).

1   person's former spouse."[43]  It goes undisputed that the parties divorced on October 2, 2017, and

2   that Coleman sent his letter to Primerica on or after December 3, 2017.  Because the letter was

3   sent after the divorce, it thus could not preclude application of NRS § 111.781's automatic

4   revocation of Aguilar's beneficiary status as a matter of law.

### 2.   *Notice under Coleman's life-insurance policy*

6        Largely conceding that the letter is not a governing instrument under NRS § 111.781,[44]

7   Aguilar also argues that Coleman told Primerica that he intended for Aguilar to be his

8   beneficiary in his December 2017 letter.  Dyson argues that the letter was insufficient notice in

9   three ways.  First, she asserts that Coleman's letter cannot possibly have redesignated Aguilar

10  because it was not "acceptable" to Primerica, given that Primerica itself did not recognize that

11  Aguilar was the policy's beneficiary.[45]  Second, she maintains that the letter did not explicitly

12  reestablish Aguilar as the beneficiary, which is required under Nevada law.  And third, she states

13  that any evidence of Coleman's intent to redesignate Aguilar is inadmissible hearsay and cannot

14  support a summary-judgment finding in her favor.  While I find that the letter was sufficient

15  notice to Primerica of Coleman's intent to change the terms of his policy, genuine issues of

16  disputed facts preclude my determining whether he intended for that letter to re-establish Aguilar

17  as his beneficiary.

18

19

20

21

22

[43] *Id.* § 111.781(11)(d) (emphasis added).

23  [44] Aguilar does not defend her governing-instrument theory in her reply brief.  *See* ECF No. 49.
    [45] ECF No. 46 at 10.

1

                      ***a.      Coleman's letter was sufficient under the policy.***

2

        Courts must interpret and enforce contracts as they are written, and they must avoid

3

"interpolat[ing] in a contract what the contract does not contain."[46]   Neither party identifies

4

Nevada law governing change-of-beneficiary status for a life-insurance policy, and it appears

5

that no Nevada court has clarified whether substantial compliance with an insurance company's

6

requirements for a change-of-beneficiary request is sufficient.[47]   But Nevada has adopted the

7

substantial-compliance doctrine in a wide range of contexts,[48] and multiple Nevada district

8

courts have persuasively concluded that Nevada would apply the doctrine in the insurance

9

context.[49]   I follow their lead and reason similarly—Nevada courts would find substantial

10

compliance with insurance-contract terms when one party makes a substantial effort to comply

11

with the policy's requirements, the party seeking to enforce the provision has notice of the other

12

13

14

---

15
16

[46] *State Dep't of Transp. v. Eighth Jud. D. Ct., Cnty. of Clark*, 402 P.3d 677, 682 (Nev. 2017); *Kaldi v. Famers Ins. Exch.*, 21 P.3d 16, 20 (Nev. 2001) ("It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written.").

17
18

[47] *See, e.g.*, *Ohran v. Sierra Health and Life Ins. Co., Inc.*, 895 P.2d 1321, 1323 (Nev. 1995) (finding a form insufficient to terminate a beneficiary when the form was only partially filled out, not signed, not dated, and not mailed).

19
20
21

[48] *See, e.g.*, *Derouen v. City of Reno*, 491 P.2d 989, 990 (Nev. 1971) (applying substantial-compliance doctrine to statute governing tort claims against a city); *Las Vegas Plywood and Lumber, Inc. v. D&D Enters.*, 649 P.2d 1367, 1368 (Nev. 1982) (holding that substantial compliance with the notice provision of a mechanic's lien statute was sufficient to perfect the liens); *Dunes Hotel, Inc. v. Schmutzer*, 370 P.2d 685, 686 (Nev. 1962) (holding that substantial compliance with the terms of a landscaping contract entitled the landscaper to his fee).

22
23

[49] *See, e.g.*, *Fortis Benefits Ins. Co. v. Johnson*, 966 F. Supp. 987, 990 (D. Nev. 1997); *United of Omaha Life Ins. Co. v. Aguayo*, No. 2:09-CV-01864, 2011 WL 534244, at *4 (D. Nev. Feb. 8, 2011); *Thrall v. Prudential Ins. Co. of Am.*, No. 3:05-CV-00067, 2007 WL 1521049, at *2 (D. Nev. May 22, 2007).

party's efforts to comply, and the company has obtained substantially the intended benefit of the contractual provision.

Coleman's policy provides him a straightforward method to change his beneficiary: he needed to provide Primerica with notice of his intent to do so, which is "[i]nformation" that Primerica receives, "signed" by Coleman and "acceptable" to Primerica.[50]  The undisputed evidence indicates that Coleman substantially complied with those requirements—he sent Primerica a signed letter stating the specific changes he wished to make to his policy.  Primerica accepted that letter, showing that it received actual notice of his intentions, and it issued him a revised policy implementing some of those changes.  There is no evidence that his notice somehow deprived Primerica of its contractual benefits.  And contrary to Dyson's assertions otherwise, there is also no evidence that the form of the notice was somehow unacceptable to Primerica; instead, there is a question as to whether the content of the notice was sufficient to inform Primerica of Coleman's intent, and whether Primerica accurately understood those intentions to reform his policy.  But that dispute does not mean that the notice itself was deficient under the policy's clear terms or that Coleman failed to follow the policy's notice requirements.

> **b.**    ***Factual disputes preclude determining whether Coleman intended to redesignate Aguilar as the policy's beneficiary.***

Similarly unanswerable at this stage is whether Coleman's letter effectively designated Aguilar as his beneficiary.  As with any writing that requires interpretation,[51] I examine the letter's plain language, whose clear terms cannot be contradicted by extrinsic evidence, to divine

---

[50] ECF No. 47-1 at 38.

[51] *United States v. Romo-Romo*, 246 F.3d 1272, 1275 (9th Cir. 2001) ("[W]e should usually give words their plain, natural, ordinary[,] and commonly understood meanings.").

12

the parties' intent.[52]   Ambiguity exists when a writing is "reasonably susceptible to more than

one interpretation."[53]   In the subject line, Coleman broadly asks to "delete spouse" from his

policy and, in the body, he specifies that he would like to "delete the entire Spouse Rider" from

the policy and "remove Karen [Aguilar] from my policy and allow her to convert to her own."[54]

But he also asks to "keep all other policy details (term, plan type, classification, rating) the

same."   As Aguilar correctly notes, the spouse-rider provision and beneficiary provision are

distinct; a request to remove a spouse rider and permit conversion to an independent policy does

not meaningfully affect a beneficiary designation.   And a request to keep the remaining policy

terms could reasonably include his former beneficiary designations, depending on whether

Coleman was aware that Nevada law automatically revoked Aguilar's status as his beneficiary.

At issue, then, is whether (1) Coleman's request to "keep all other policy details [] the same"

meant that Coleman also wished to reestablish his pre-divorce designation of Aguilar as his

beneficiary or (2) Coleman was aware that Aguilar had been automatically removed as his

beneficiary, and he wished to keep it that way and to not designate a new beneficiary.   Both

parties marshal competing sets of theories and evidence to support their preferred position.[55]

Because I find that Coleman's letter is ambiguous on this point and that reasonable minds

could differ on the material, disputed facts at issue, summary judgment on this question is

---

[52] *Pierce Cnty. Hotel Emps. & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.").

[53] *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994).

[54] ECF No. 47-1 at 64 (emphasis in original).

[55] *See, e.g.*, ECF Nos. 39-5; 50 at 15.

1   unavailable.[56]  "[I]ssues of knowledge and intent are particularly inappropriate for resolution by

2   summary judgment."[57]  Nevada's courts agree, and have long held that when "the meaning of [a

3   writing] is ambiguous and resort to extrinsic evidence is required to ascertain the intention of the

4   parties, summary judgment is inappropriate in the face of contradictory or conflicting

5   evidence."[58]  While the parties cite little Nevada law on this point, in *Kerekes v. Primerica, Inc.*,

6   a Pennsylvania district court persuasively handled a remarkably similar situation.[59]  There, as

7   here, an insured asked his insurance company to "delete spouse" from his life-insurance policy,

8   failing to clarify whether he intended to delete his ex-spouse as his beneficiary, from his spouse-

9   rider provision, or from the policy entirely.[60]  When he died, his ex-wife and the insurance

10  company were uncertain as to whether he intended for his ex-wife to benefit from his demise.[61]

11  In declining to enter summary judgment, the *Kerekes* court reasoned that the insured's request

12  was ambiguous on the issue of intent.[62]  So too here.  Coleman's letter is ambiguous as to

13  whether he intended to re-establish Aguilar as his beneficiary, or whether he intended that his

14  policy would lack a beneficiary, thus permitting the policy's proceeds to disperse to his estate.

15  And while the *Kerekes* court did not need to grapple with the effects of an automatic-revocation

16

17

---

18  [56] *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  Because the letter itself is susceptible of
    both meanings and therefore creates a dispute of fact, I need not and do not address whether

19  Aguilar's further evidence about Coleman's intent is admissible.

20  [57] *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985).

    [58] *Margrave*, 878 P.2d at 293 (citing *Mullis v. Nev. Nat'l Bank*, 654 P.2d 533, 536 (Nev. 1982)).

21  [59] *Kerekes v. Primerica, Inc.*, No. 1:14-cv-1665, 2015 WL 12516495, at *1 (M.D. Penn. Sept.
    24, 2015).

22  [60] *Id.* at *5.

23  [61] *Id.* at *2.

    [62] *Id.* at *4–5.

1  statute like Nevada's, this is a distinction without a difference; it is still unclear, from the face of

2  Coleman's letter, whether he intended to re-designate Aguilar as his beneficiary.

3       Dyson's reliance on the out-of-state-and-circuit decisions *In re Estate of Lamparella*,

4  *Buchholz v. Storsve*, and *Mearns v. Scharbach* does not alter my analysis.[63]  The *Mearns* and

5  *Lamparella* decisions merely reinforce that a change-of-beneficiary notice must be in writing and

6  must comply with the applicable policy terms.[64]  Coleman's notice does that.  And the *Buchholz*

7  decision is entirely inapposite.  That court dealt with whether to retroactively apply South

8  Dakota's automatic-revocation statute and whether an insured's inaction was evidence of a desire

9  to maintain a beneficiary designation, before holding that the statute automatically revoked the

10  insured's designation of her ex-spouse as her beneficiary.[65]  At no point, however, did the

11  *Buccholz* court address the affirmative content a new notice of designation must include after

12  application of an automatic-revocation statute.  So I decline to grant summary judgment for

13  either party.

14  **II.  Motion for attorneys' fees**

15       As the plaintiff in this "strict action of interpleader,"[66] Primerica seeks $10,717.50 in

16  attorneys' fees and $619.87 in costs.  Only Aguilar responded to Primerica's motion and, while

17

---

18  [63] ECF No. 50 at 9–10 (citing *In re Estate of Lamparella*, 109 P.3d 959 (Ariz. Ct. App. 2005);
19  *Mearns v. Scharbach*, 12 P.3d 1048 (Wash. Ct. App. 2000); *Buchholz v. Storsve*, 740 N.W.2d 107 (S.D. 2007)).

20  [64] *Lamparella*, 109 P.3d at 967 ("If a divorced spouse wishes to redesignate the former spouse as the beneficiary post-dissolution, such designation must be in writing and must otherwise comply
21  with applicable policy terms."); *Mearns*, 12 P.3d at 1053 ("[W]e conclude that any redesignation of [the ex-spouse] as a beneficiary had to be in writing.").

22  [65] *Buchholz*, 740 N.W.2d at 113.

23  [66] *Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193 (9th Cir. 1926) ("Under this provision, federal courts have continued the former equity practice of allowing attorney fees to interpleading plaintiffs in strict actions of interpleader.").

she does not oppose the request, she argues that the insurance company seeks certain costs disallowed by this court's local rules.[67]  Aguilar is correct that Local Rules 54-3 and 54-6(b) disallow taxable costs for "costs of transcripts of pretrial, trial, and post-trial proceedings"; "reproducing copies" of "routine case papers"; and "costs and page fees for electronic access to court records."[68]  But I see no prohibition in the Local Rules against the recovery of runners' fees.[69]  So I grant Primerica's motion in part and award it $11,294.12.

### Conclusion

IT IS THEREFORE ORDERED that Dyson's and Aguilar's cross-motions for summary judgment **[ECF Nos. 38, 39] are DENIED.**

IT IS FURTHER ORDERED that this case is REFERRED to the magistrate judge for a settlement conference.  The parties' obligation to file their proposed joint pretrial order is STAYED until 10 days after the conference.

IT IS FURTHER ORDERED that Primerica's motion for attorneys' fees **[ECF No. 53] is GRANTED IN PART.**  Primerica shall receive $11,294.12 in attorneys' fees and costs.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: June 9, 2021

---

[67] ECF Nos. 55, 56.

[68] L.R. 54-3, 54-6(b).

[69] *See* ECF No. 55 at 2 (citing L.R. 54).

16